NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 85

No. 2020-011

| | |
|---|---|
| Jennifer Fabiano | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Mary B. Cotton | May Term, 2020 |

Thomas Carlson, J.

Claudine C. Safar and Christian S. Chorba of Monaghan Safar Ducham PLLC, Burlington, for
  Plaintiff-Appellant.

Cynthia L. Broadfoot and Deborah M. Ryan (On the Brief) of Broadfoot, Attorneys at Law,
  Burlington, for Defendant-Appellee.


PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.     **ROBINSON, J.**   Plaintiff challenges the trial court's order granting defendant's motion to modify the parties' parenting schedule. She argues that the trial court abused its discretion by (1) holding a hearing on the motion to modify when a prior judge had determined that the case should proceed as a motion for relief from judgment, (2) finding that there was a real and unanticipated change in circumstances, and (3) assessing the best interests of the child. We affirm.

¶ 2.     With respect to the events leading up to this motion to modify, the family division found the following facts. The parties were married in 2012. Plaintiff gave birth to their child in

2015, and defendant adopted the child through a second-parent adoption that was final in October 2016.

¶ 3. The parties ended their sexual relationship in January 2017, but continued to live together and act as co-parents. Defendant changed the child's diapers, cooked, and played with her after work. She took the child swimming and skiing, and took her on visits to the library, defendant's parents' home, and elsewhere in the community. There were no limits to her contact with the child except for her full-time work. The parties communicated with each other daily and did not tell anyone they were separated.

¶ 4. In November 2017, the parties signed a "Marital Settlement Agreement" with the help of an application called "Wevorce." In negotiating the agreement, they did not consult with lawyers or third parties, except for one half-hour consultation with "a lawyer on Church Street." At the same time, they signed a court form titled "Agreement on Parental Rights and Responsibilities, Parent Child Contact and Provisions Relating to Children." Plaintiff filed for divorce in December 2017, and submitted the parties' stipulation to waive final hearing. The parties were still living together and sharing in the child's care when they commenced the divorce action.

¶ 5. The Wevorce Marital Settlement Agreement included the following language:

- Decision-Making: We agree that decisions for our child's health, safety and welfare will be made by: [Plaintiff].

- Day-to-Day Parenting:
  o Our child will spend the following times with [plaintiff]: All nights.
  o Our child will spend the following times with [defendant]: No nights.
  o Exchanges: No neutral party necessary.

- Childcare:
  o Responsibility for choosing work-related childcare: [Plaintiff.]

2

    ○  If child care over 3 hours is required, we agree to offer the other parent the opportunity to be with the child before seeking care from someone else.

- Relocation:
  - We agree that this parenting plan will become impractical if either of us were to move more than 170 miles from Burlington, Vermont. We agree that neither party will move the child outside of this area without a mutual, written agreement.

The agreement also called for plaintiff to provide health insurance for the child and for a "zero" child-support order.

¶ 6.    Similarly, the Agreement on Parental Rights and Responsibilities provided that plaintiff would have primary legal and physical responsibility for the child and would make the day-to-day decisions. The parenting schedule indicated that the child would spend every night with plaintiff, and that this schedule would not change over holidays, birthdays, three-day weekends, or school vacations. The agreement required parents to give advance notice if they planned to increase the distance between the parents' homes by more than 170 miles. Several sections of the form were left blank, namely the sections regarding communication, information sharing, reviewing and adjusting the parenting plan, and resolving disputes. A magistrate approved the Agreement on Parental Rights and Responsibilities in February 2018 and approved a zero child-support order in March 2018.

¶ 7.    The divorce was finalized in July 2018 at an uncontested hearing before the family division. Both parties represented themselves. At the time, they continued to live in the same house and to share care of the child. The assistant judge conducting the hearing had the following exchange with the parties:[1]

> Trial court: Day-to-day parenting—well you seem to have a good relationship, you can share legal—

---

[1] The omissions in this transcript reflect affirmations from other speakers such as "yeah" and "oh." No material statements have been omitted.

Defendant: I've—basically I see her all the time, we're co-parents. . . . But [plaintiff] felt very strongly to keep legal and physical custody. . . . And I didn't want a court battle. . . . So in order to like keep it like amicable and we both are fine, I said fine.

Trial court: Well, that's the best thing for your child I would think. I don't know. . . . But you're an important part of her life. . . . And you'll be reasonable with keeping her informed of things. And you—if—you know that you can get any kind of doctor's thing. . . . because you're the co-parent. . . .

And you are going to communicate monthly anything pertinent to [the child]. I would think maybe even more than that.

Plaintiff: Yeah.

Defendant: It's pretty much daily at this point.

The final divorce order incorporated the terms of the parties' stipulation.[2] Following the divorce, the parties continued to live and co-parent together.

¶ 8. In November 2018, plaintiff moved out and became reluctant to allow defendant time with the child. She first informed defendant that she had found another place to live. A week later, while defendant was out of the house, plaintiff packed up the child's possessions and moved out. Plaintiff had not discussed this "total move" with defendant beforehand. When defendant raised the issue, she replied, "let me get settled, and we'll figure it out." After her move, plaintiff allowed defendant some time with the child, but refused to establish a plan or a schedule of parenting time with defendant, stating that any time with the child was solely in plaintiff's discretion. She told defendant over text: "The plan is that I have her. I don't mind all the times

---

[2] The court's final order incorporates the "terms of the parties' stipulation or the court's previous temporary order re Parental Rights and Responsibilities and Parent Child Contact." (Emphasis added.) The magistrate incorporated the parties' Agreement on Parental Rights and Responsibilities into the court's temporary order. The Marital Settlement Agreement, including the provisions relating to parental rights and responsibilities and parent-child contact, is incorporated into the parties' Final Stipulation as to property, debts and spousal support which is appended to the court's final order. It is therefore unclear from the record whether the court's final order incorporates the Marital Settlement Agreement or the Agreement on Parental Rights and Responsibilities, or both. Our reasoning is the same regardless of the answer to this question.

4

you've been with her as long as you don't pester me constantly. I know a schedule might be easiest for you but that's not easiest for us."

¶ 9. In January 2019, defendant filed a motion to modify parent-child contact on the ground that "[t]here has been a real, substantial and unanticipated change of circumstances in that the parent and child are no longer all living in the same household and there is no schedule for any parent child contact for Defendant." Plaintiff opposed the motion to modify. At this stage and onward, both parties were represented by counsel.

¶ 10. The procedural path of defendant's motion was somewhat unusual. The family division, Judge Nancy Waples, held a hearing on the motion in March 2019. The court wanted to determine whether the parties' agreement was enforceable before considering whether there was a change in circumstances warranting modification under 15 V.S.A. § 668.[3] Defendant's attorney offered to file a motion to set aside the underlying judgment that was based on the marital settlement agreement. The court approved that plan, indicating that it would first address the enforceability of the parties' agreement. Pending an evidentiary hearing, the court ordered an interim parent-child contact schedule, which it subsequently modified in July.

¶ 11. Defendant accordingly filed a motion to set aside the final decree and order pursuant to Vermont Rule of Civil Procedure 60(b), applicable in the family division through Vermont Rule of Family Procedure 4.0(a)(2). She also renewed her motion to modify or clarify. Defendant's arguments in support of her Rule 60(b) motion were based in part on her own learning disability. Plaintiff issued subpoenas to defendant's employer and medical health providers, which defendant moved to quash. The discovery motions were considered by Judge Thomas Carlson, who had newly rotated to the county. He issued a decision in which he stated that his decision on the motion to quash depended on whether defendant wanted to pursue the Rule 60(b) motion:

_____

[3] It is not entirely clear which agreement Judge Waples was referring to. See supra, note 2.

5

The question in the court's mind at present is as to the scope of relief actually sought by Defendant. If it is merely to establish a schedule of parent child contact that was omitted from the final agreement and order, it is this court's view that the final order need not be set aside in its entirety. . . . If, on the other hand, Defendant wants to set the entire final order aside and start from scratch, on grounds of duress and unconscionability arising from some learning/emotional disability, then the court sees the issue as to Defendant's mental health has been raised . . . .

¶ 12. The court held a hearing in September 2019 to resolve this uncertainty. Defendant's counsel stated that she filed the Rule 60(b) motion at Judge Waples' instruction, but indicated that defendant was only seeking a parent-child contact schedule, and was not seeking to set aside the entire agreement. Over plaintiff's objection, the court deemed defendant's motion to set aside the underlying judgment withdrawn and indicated that it would proceed to adjudicate the motion to modify. In light of that ruling, it also granted defendant's motion to quash.

¶ 13. Following an evidentiary hearing over two days in October 2019, the court granted the motion to modify. The court found that the last final order included ambiguous and conflicting provisions, and that the parties never appeared to reach a true meeting of the minds with regard to defendant's parenting time. It also found that there was a real, substantial, and unanticipated change in circumstances since the final order. Specifically, the Marital Settlement Agreement was predicated on the expectation that the parties would continue to co-parent, and that "the dramatic change in [plaintiff's] approach to 'co-parenting' that occurred when she moved out" was a real, substantial, and unanticipated change in circumstances. The court also noted the public policy issues that would arise from enforcing the agreement as written, after the breakdown in communication between the parties.

¶ 14. The court found that plaintiff's actions since she moved out "fit the picture of [plaintiff] trying to write [defendant] out of [the child's] life." After moving for a second time, plaintiff changed the child's name with her school and pediatrician to remove defendant's last

name.[4]  She stopped referring to defendant as "Momma" and instead referred to her by name.  At trial, plaintiff "was oddly reluctant to acknowledge that [defendant] loves [the child] or that [the child] loves her" and "never missed an opportunity to denigrate [defendant] as a parent and as a person, even when those efforts were clearly overreaching."  Plaintiff made several inflammatory allegations regarding defendant's character and parenting abilities, which the trial court firmly rejected.  Among other accusations, plaintiff asserted that defendant had viewed adult pornography in January 2017 and had read a fictional erotic fantasy story with inflammatory content in the spring of 2017.  All of the claims surfaced only after defendant filed her motion to modify in 2019, and the court found they were "clearly designed to try to paint a picture of [defendant] as a risk to [the child]."  The court considered the allegations and found each to be either not credible or not relevant, stating that it was "wholly unconvinced."  It found that "[t]here was no evidence of any cause for concern arising from [defendant's] time with [the child] since her contact was restored."

¶ 15.  The court then generally considered the best-interest factors listed in 15 V.S.A. § 665(b) and concluded that it was in the child's best interests to establish a parent-child contact schedule for defendant.  The court found that the child "has loving, supportive, informed and safe relationships with both of her parents and also with important other adults in each parent's lives."  The only factor under § 665(b) for which the court found a distinction between the parties was § 665(b)(5), "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent."  The court again criticized plaintiff's attempts to disparage defendant, but stated that it hoped "those efforts are now arrows that can be put away, dismissed as truly unfortunate bad ideas, while the focus turns to [the child]."  The court set a schedule allowing defendant to have parent-child contact every other weekend and Tuesday

---

[4]  The child's legal name includes both parents' last names.

7

afternoons during the school year. The schedule flips over the summer, and the parties alternate holidays and school vacations with the child.

¶ 16. Plaintiff makes three main arguments on appeal. First, she argues that the court abused its discretion in proceeding on the motion to modify, rather than the Rule 60(b) motion, because Judge Waples' decision to proceed under Rule 60(b) was the "law of the case." Second, she argues that the court abused its discretion in holding that the parenting schedule was ambiguous and in finding a real, substantial, and unanticipated change in circumstances. Third, she argues that the court abused its discretion by failing to properly weigh the child's best interests.[5] Defendant responds that the court did not err in addressing the motion to modify; in finding a real, substantial, and unanticipated change in circumstances; or in weighing the child's best interests. She concedes that the court erred in concluding that the existing contact schedule was ambiguous, but contends that this was not reversible error because the change in circumstances provided the basis for its modification of the parenting schedule.

¶ 17. We agree with defendant that there was no abuse of discretion here. "The family court has broad discretion in awarding, modifying, or denying parent-child contact, and we will not disturb its decisions unless its discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Weaver v. Weaver, 2018 VT 38, ¶ 15, 207 Vt. 236, 186 A.3d 1119 (quotation omitted). We will uphold the court's factual findings if supported by the evidence and its legal conclusions if supported by the findings. Id. Here, the

---

[5] Plaintiff also argues that the trial court erred in failing to award her child support from defendant. Plaintiff did not move to modify the stipulated child-support order of zero and did not otherwise request child support. Under 15 V.S.A. § 658(b), a court "may . . . raise the issue of support on its own motion." (Emphasis added.) But we have rejected the notion that the court must raise the issue itself if it is not raised by the parties. Peckham v. Peckham, 149 Vt. 388, 390-91, 543 A.2d 267, 269 (1988) (interpreting prior version of statute). If plaintiff wants to modify the child-support order, she should file a motion asking the trial court to do so.

8

court did not abuse its discretion by proceeding on the motion to modify, in finding a change in circumstances, or in assessing the best interests of the child.

## I.  Law of the Case

¶ 18.    We first reject plaintiff's argument regarding the law-of-the-case doctrine.  Plaintiff argues that by proceeding on the motion to modify rather than the Rule 60(b) motion, the trial court improperly overturned Judge Waples' prior decision, which was the law of the case.  We disagree for at least two reasons.  First, the trial court did not overturn any prior decision.  Second, even if the trial court had overturned its prior decision, the law-of-the-case doctrine does not preclude a trial court from countermanding a previous interlocutory order, and the trial court's decision to do so was not an abuse of discretion.

¶ 19.    The law-of-the-case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided."  Kneebinding, Inc. v. Howell, 2018 VT 101, ¶ 30, 208 Vt. 578, 201 A.3d 326 (quotation omitted).  Courts generally apply the doctrine in two scenarios: "(1) where a case is in front of the trial court on remand for readjudication after appellate review; and (2) where a trial court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court."  Id. (citation and quotation omitted).  The doctrine is not a jurisdictional or bright-line rule, Perkins v. Vt. Hydro-Electric Corp., 106 Vt. 367, 415, 177 A. 631, 653 (1934), but rather "rests for its absolute integrity upon sound public policy," State v. Cain, 126 Vt. 463, 469-70, 236 A.2d 501, 505 (1967).

¶ 20.    Here, the law-of-the-case doctrine does not apply because Judge Waples never denied or otherwise disposed of the motion to modify.  Plaintiff argues that Judge Waples' statements at the March hearing were a "definitive denial of [defendant's] motion to modify."  But Judge Waples did not deny the motion.  She indicated that she wanted to determine whether the Marital Settlement Agreement was enforceable before considering the motion to modify.  She instructed defendant's counsel to "amend your pleading . . . because there is an MSA in place and

9

I'm obligated to at least . . . [ask] the threshold question as to whether it's enforceable." She then clarified that "once that decision is made by the court, whoever the assigned judge will be, then that will obviously impact . . . your motion in terms of the modification." The court's statements at the hearing reflect an intent to reserve the motion to modify until after it resolved the enforceability issue, not to deny the motion to modify on its merits. Moreover, the court did not issue an order denying the motion to modify—and it had not heard any evidence that could provide a basis for such a denial.

¶ 21. Even if the court had denied the motion to modify, the law-of-the-case doctrine did not strip it of jurisdiction to revisit a prior decision. The law-of-the-case doctrine "normally does not bind the trial court," Kneebinding, 2018 VT 101, ¶ 31, and the court may depart from the doctrine "in a proper case," Morrisseau v. Fayette, 164 Vt. 358, 364, 670 A.2d 820, 824 (1995) (quotation omitted). We have recognized that trial courts have "the discretion to modify an interlocutory order." Myers v. LaCasse, 2003 VT 86A, ¶ 11, 176 Vt. 29, 838 A.2d 50; see also Converse v. Town of Charleston, 158 Vt. 166, 169, 605 A.2d 535, 537-38 (1992) ("Even if the pretrial judge had decided the res judicata issue on the merits, the trial judge retained the power to reopen what had been decided." (quotation and alteration omitted)). In Myers, we found no abuse of discretion where the court had granted one party's motion for summary judgment, then identified several new issues on its own motion, and after briefing on those issues, granted the other party's motion to vacate and their motion for summary judgment. 2003 VT 86A, ¶¶ 9-12. Similarly, in Morrisseau we rejected a law-of-the-case argument where a second trial judge granted a motion for summary judgment after a prior judge had denied a similar motion. 164 Vt. at 364, 670 A.2d at 824. Even if Judge Waples had denied the motion to modify, Judge Carlson's decision to revisit the motion was a matter subject to his discretion.

¶ 22. We find no abuse of discretion here. Judge Carlson based his decision on defendant's representations at the September 2019 hearing that defendant sought only to modify

10

or clarify the parent-child contact schedule, not to set aside the entire judgment. The court wrote in its decision on the pending discovery motions, "Defendant never intended or wished to file [the Rule 60(b) motion] but did so at Judge Waples' suggestion. The court now considers that 60(b) motion withdrawn in light of Defendant's decision to stand and this court's decision to proceed on the original motion to modify as supplemented on April 23, 2019." This determination was based on a sound assessment of the procedural posture of the case and underlying law. "[W]e are unwilling to apply a useful rule of practice in a way that prevents efficient adjudication." Id. at 364, 670 A.2d at 824.

## II. Change in Circumstances

¶ 23. We next reject plaintiff's arguments that the trial court abused its discretion in finding that there was a real, substantial, and unanticipated change in circumstances.[6]

¶ 24. In a motion to modify parent-child contact, the moving parent bears the burden of making a threshold showing of a "real, substantial and unanticipated change in circumstances." 15 V.S.A. § 668(a); see also Clark v. Bellavance, 2016 VT 124, ¶ 11, 204 Vt. 111, 162 A.3d 679. There are no fixed standards for the trial court's determination of this threshold issue. deBeaumont v. Goodrich, 162 Vt. 91, 97, 644 A.2d 843, 847 (1994). However, we have established "general principles" for a court's exercise of discretion: the court should consider "the context of all the surrounding circumstances, keeping in mind that the effect on the child is what makes a change substantial." Chickanosky v. Chickanosky, 2011 VT 110, ¶ 24, 190 Vt. 435, 35 A.3d 132 (quotation omitted). Among the surrounding circumstances, the court should consider whether the

---

[6] Because we affirm on this basis, we do not need to reach plaintiff's additional argument that the trial court erred in finding that the parenting agreement incorporated into the court's final divorce order was ambiguous concerning defendant's parent-child contact. Even assuming the final order unambiguously provided for no scheduled parent-child contact time or overnights with defendant, the trial court's conclusion that this order is subject to modification on account of a real, substantial, and unanticipated change of circumstances is supported by the evidence and within its discretion.

moving parent seeks to modify the allocation of parental rights and responsibilities, or merely seeks to modify a parent-child contact schedule. The type of evidence necessary to show changed circumstances sufficient to support modification of parent-child contact is not necessarily the same as the evidence required to support a modification of physical rights and responsibilities. See, e.g., Hawkes v. Spence, 2005 VT 57, ¶ 20, 178 Vt. 161, 878 A.2d 273 ("The burden of showing changed circumstances with respect to a motion to alter parent-child contact is 'not as high' as the heavy burden of showing changed circumstances with respect to a motion seeking a change of custody."); cf. Wener v. Wener, 2016 VT 109, ¶ 21, 203 Vt. 582, 157 A.3d 1108 (recognizing difference in changed circumstances that may warrant modification of legal rights and responsibilities and changed circumstances necessary to support modification of physical rights and responsibilities).

¶ 25. Plaintiff's argument on appeal rests on two assertions: First, defendant's motion to modify was based entirely on plaintiff's move out of the marital residence, and therefore the court abused its discretion in relying on plaintiff's failure to cooperatively coparent as the basis for modifying the previous order; and second, the final divorce order anticipated plaintiff moving up to 170 miles away, and therefore her post-divorce move out of the marital residence could not have been a substantial and unanticipated change of circumstances.

¶ 26. We reject both assertions. Neither the motion to modify nor the court's finding rests entirely on plaintiff's move away from the parties' previously shared residence. Rather, the change in circumstances stemmed from the breakdown in communication and cooperative coparenting between the parties, which was exemplified in part by plaintiff's abrupt move, her refusal to establish a parenting schedule, and her pattern of excluding defendant from the child's life. As set forth more fully below, notwithstanding the "170 miles" provision, on the facts of this case such a breakdown can constitute a sufficient change in circumstances to warrant modification of a parent-child contact order.

¶ 27. Plaintiff's first argument mischaracterizes the scope of defendant's motion. Although the motion to modify stated that "[t]here has been a substantial and unanticipated change of circumstances in that the parent and child are no longer all living in the same household," it also pointed to the fact that plaintiff had refused to set a parenting schedule, "asserting that all parent child contact between child and Defendant must be solely with her agreement," and "mak[ing] it impossible for Defendant to plan and maximize her relationship with the child." The court found that the "dramatic change in [plaintiff's] approach to 'co-parenting' " was a sufficient change of circumstances to modify the parent-child contact order. In so concluding, the trial court did not deviate significantly from the rationale described in the motion to modify.

¶ 28. With respect to plaintiff's second argument, we reject the assertion that the "170 miles" provision in the settlement agreement that was incorporated into the court's final divorce order precludes a finding that there was a real, substantial, and unanticipated change in this case. The relevant provision in the Marital Settlement Agreement states, "We agree that this parenting plan will become impractical if either of us were to move more than 170 miles from Burlington, Vermont." Likewise, the Agreement on Parental Rights and Responsibilities states, "If either parent plans to relocate to a residence that will impact the child(ren)'s school enrollment or increase the distance between the parents' homes by more than 170 miles, the parent who relocates shall provide the other parent with reasonable advance notice." We have held that such a provision may "specify the expectations of the parties with respect to their living arrangements at the time of the divorce," which "represent the baseline for determining when changes are anticipated and are real and substantial." deBeaumont, 162 Vt. at 96 n.2, 644 A.2d at 846 n.2. If the trial court had based its analysis solely on the fact that some time after the final divorce plaintiff moved with the child out of the residence they had continued to share with defendant, the move alone likely would have been consistent with the expectations reflected in the parties' stipulations.

¶ 29. But where a parent-child contact order is premised on the parties' continued cooperation in co-parenting, a breakdown of that cooperation can constitute a change in circumstances warranting a modification of that order. See, e.g., Weaver v. Weaver, 2018 VT 38, ¶ 18, 207 Vt. 236, 186 A.3d 1119 ("A parent's willful, repeated interference with physical rights and responsibilities of the other parent may constitute changed circumstances sufficient to justify modification [of parent-child contact]." (quotation omitted)); Adamson v. Dodge, 2006 VT 89, ¶¶ 2, 7, 180 Vt. 612, 910 A.2d 821 (mem.) (affirming trial court's finding of changed circumstances due to mother's move to Wisconsin and breakdown in communication, and noting that modification "attempted to minimize acrimony by establishing clear rules and diminishing the need to 'negotiate' "); see also Clark, 2016 VT 124, ¶¶ 2, 9, 21 (affirming change of parental rights and responsibilities from mother to father where parties were initially "committed to a healthy, respectful and supportive co-parenting relationship," but mother began unilaterally withholding father's court-ordered parent-child contact time); Maurer v. Maurer, 2005 VT 26, ¶ 8, 178 Vt. 489, 872 A.2d 326 (mem.) (affirming finding of changed circumstances supporting change in parental rights and responsibilities where "the parties' inability to share parental rights and responsibilities was a new development"); Hoover (Letourneau) v. Hoover, 171 Vt. 256, 259-60, 764 A.2d 1192, 1194 (2000) (holding that inability to resolve conflict meant that disruption of shared-custody arrangement was "inevitable"). In short, a breakdown in cooperation between parents can support a modification of a parent-child contact order to the extent the order is premised on shared expectations about the parties' intentions and abilities to cooperate to effectuate parent-child contact.

¶ 30. The court's finding of changed circumstances in this case was supported by the evidence. The court found that the parties' stipulation was predicated on an expectation of ongoing cooperation and coparenting, which was supported by the parties' colloquy with the magistrate, the testimony of friends and family, and the fact that the parties continued to live together and

14

share care of the child for almost two years after their separation. The court's findings as to plaintiff's change in behavior and refusal to co-parent were supported by the testimony, as well as its own observations of plaintiff's behavior in court. "[W]e will not disturb the court's determination [of changed circumstances] unless it exercised its discretion on grounds or for reasons clearly untenable, or if it exercised its discretion to a clearly unreasonable extent." Clark, 2016 VT 124, ¶ 13 (quotation omitted).

¶ 31.  Moreover, the court's reasoning is consistent with the principle that in assessing changed circumstances, the court may " 'consider the impact of the change upon the children.' " Hawkes, 2005 VT 57, ¶ 10 (quoting Gates v. Gates, 168 Vt. 64, 69-70, 716 A.2d 794, 798 (1998)). Even if the parties anticipated that defendant's parent-child contact would occur only at plaintiff's discretion, the trial court may properly consider whether plaintiff's change in the way she exercised that discretion, and the resulting change in the frequency of the child's contact with defendant, had an unanticipated impact on the child. Cf. Meyer v. Meyer, 173 Vt. 195, 198, 789 A2d 921, 923 (2001) ("Even if the parties had anticipated disagreeing continually as father contends, the effect of this on the children was not necessarily anticipated."). Here, the parties had essentially stipulated to parent-child contact "as the parties mutually agree," in a situation that allowed for defendant to be with the child on a daily basis. In the face of a dramatic curtailment of that contact and an absence of any ongoing mutual agreement as to parent-child contact, the court could reasonably determine that the order was subject to modification to establish a specific parent-child contact schedule.

### III.  Best Interests

¶ 32.  Finally, we reject plaintiff's argument that the trial court erred in determining that it was in the child's best interests to modify the parent-child contact schedule. Plaintiff argues that the court failed to properly consider her allegations that defendant posed a danger to the child and that it failed to properly consider plaintiff's parenting abilities. Neither claim has merit.

15

¶ 33.    Once the court has determined that there was a real, substantial, and unanticipated change in circumstances, it must "determine if changes to the orders would be in the best interest of the child" and "make changes as it deems necessary."[7]  Patnode v. Urette, 2017 VT 107, ¶ 4, 206 Vt. 212, 179 A.3d 1242.  This determination, too, we review with substantial deference.  Id.

¶ 34.    Here, the trial court found that the child has loving and supportive relationships with both parents and that a "basic schedule of reasonable time" with defendant would be in the child's best interests because it would offer an "undisputed path that both parents and [the child] can rely and plan on."  This finding was supported by the record and is consistent with the Legislature's general observation that "it is in the best interests of [a] minor child to have the opportunity for maximum continuing physical and emotional contact with both parents."  15 V.S.A. § 650.  Although the trial court did not individually consider each statutory best-interest factor under 15 V.S.A. § 665(b), it stated that in applying the factors, there was "no significant distinction between the parties" except the ability and disposition of each parent to foster a positive relationship with the other, which plaintiff had not demonstrated.  The court acted within its discretion in assessing the best-interest factors.  Cf. DeLeonardis v. Page, 2010 VT 52, ¶ 25, 188 Vt. 94, 998 A.2d 1072 (concluding trial court did not abuse its discretion where trial court did not cite to statutory factors but appeared to rely primarily on two factors and legislative policy).

¶ 35.    We are unconvinced by plaintiff's argument that the trial court erred in concluding that defendant did not pose a danger to the child.  Plaintiff argues that the court "ignored" or "failed to properly take into consideration" plaintiff's purported concerns regarding defendant's sexual interests.  This argument is surprising because the trial court's findings on this issue were very

---

[7] If the court finds that modification is in the child's best interests, it may modify the order, including changing the schedule of overnights.  Here, the original order included no overnights with defendant, and the modified order does include overnights.  Our standard of review is the same regardless of whether the court modified the overnight schedule: whether the best-interests analysis and the schedule the court ordered was an abuse of discretion.

clear. The court considered plaintiff's testimony and the evidence she submitted, and found that plaintiff and her counsel's effort "says far more to the court about [plaintiff's] lack of support of a positive relationship between [defendant] and their daughter than anything else." It found that plaintiff's reports regarding defendant's sexual interests had "little if any relevance to the question before the court." Plaintiff has shown us no reason to disturb these findings, apart from repeating the same inflammatory allegations that the trial court found to be "clearly overreaching." We will not reweigh the evidence or make findings of credibility on appeal. See Clark, 2016 VT 124, ¶¶ 15-19 (refusing to reweigh evidence to adopt mother's theory that she made allegations against father in good faith, where court found that mother persisted in allegations despite lack of support). For the same reason, we reject plaintiff's argument that the court should have given less weight to defendant's parents' testimony that defendant was a loving and supportive parent and that they had no concerns about her care for the child.

¶ 36. We also disagree with plaintiff's argument that the court gave too little weight to plaintiff's parenting abilities. Again, plaintiff asks us to adopt her version of events by crediting testimony that she was an excellent parent and her own testimony that defendant was not. The court had evidence before it of both parents' strengths and faults, and found that defendant, as well as plaintiff, was "an active and involved parent from the start." It found that the parents shared caretaking responsibilities and were both loving, supportive, and informed parents. We see no reason to disturb the court's findings, which were supported by the evidence. See Weaver, 2018 VT 38, ¶ 15. Moreover, plaintiff's parenting abilities have little bearing on the issue before the trial court, which, as the court noted, "boils down to whether [defendant] will be entitled to a basic schedule of reasonable time with [the child]." Parent-child contact is not an all-or-nothing competition: even if plaintiff had shown superb parenting abilities, it would still be in the child's best interests to spend time with defendant, who has parented her since birth. See Gazo v. Gazo, 166 Vt. 434, 444, 697 A.2d 342, 348 (1997) ("The parent without physical responsibility for the

17

children has a right to some measure of parent-child contact unless the best interests of the children require otherwise."). We therefore affirm the trial court's conclusion that modifying the parenting schedule was in the best interests of the child.

     Affirmed.

                                          FOR THE COURT:

                                          _____

                                          Associate Justice