Nils TRAHNSTROM v. Ana
TRAHNSTROM

[756 A.2d 1242]

No. 99-333

May 22, 2000. Father appeals from the decision of the family court awarding sole physical parental rights and responsibilities for the parties' children to mother and ordering father to pay mother $14,526 as an equitable distribution of the marital assets. Father claims that the court failed to consider the impact of a change in custody, erred in finding that father was less likely to foster a relationship with the other parent, erred in concluding that mother was the primary care giver, should have considered the children's relationship with their daycare provider, and made an inequitable property settlement. We affirm.

The court found the following facts. The parties were married in 1989 and separated in 1997 because mother was having an affair. Father worked as an interior woodworker throughout the marriage; mother worked until 1992, when their first child was born. A second child was born in 1995. Mother was the primary caretaker for the children during the marriage. After the parties separated, father remained in the marital home in Mendon and mother moved out. Between August 1997 and November 1997, mother returned to the marital home daily, to care for the children there while father worked. By November, mother had rented a home in Warren and found employment at Sugarbush Ski Area. The court specifically found that, although no evidence of it was admitted at the November 5, 1997, temporary hearing, the parties *had* reached an agreement in November that the children would move to Warren to live with mother. On November 15, 1997, father helped mother and the children move into the Warren home.

On November 19, 1997, the court issued a temporary order, awarding sole physical parental rights and responsibilities to father, and the children then moved back to Mendon. For eighteen months, the children lived in Mendon with father and saw mother three out of four weekends, for at least two overnights and sometimes three. In May 1999, the court held a trial and awarded sole parental rights and responsibilities for the children to mother. In making its decision, the court considered the statutory factors outlined in 15 V.S.A. § 665(b), and found the parties equally situated with respect to most factors. The court awarded physical custody to mother based on her position as primary caretaker and her greater ability to promote the children's relationship with the other parent.

On appeal, father contends that the court failed to consider the impact of a change of custody and erroneously found that mother was better able to foster the children's relationship with the other parent. Under § 665(b), the court is required to consider each factor listed when making a determination of parental rights and responsibilities; that subsection "imposes no specific requirement on how this consideration is to be manifested in the court's findings and conclusions." *Harris v. Harris*, 149 Vt. 410, 414, 546 A.2d 208, 212 (1988). The court found that the evidence showed the children were adjusted to being with mother in her home in Warren, and there was testimony from both mother and one of mother's friends to that effect. The court explicitly exam-

ined the impact of a change in custody and concluded that the children were comfortable and well-adjusted to mother's home. The finding is supported by reasonable credible evidence and supports the court's conclusion; therefore, neither will be disturbed. See *Stickney v. Stickney*, 170 Vt. 547, 548, 742 A.2d 1228, 1230-31 (1999). Further, the court noted that both parents had an ability to foster a relationship with the other parent but found that mother was better able to foster a relationship with the other parent, based on father's continuing resentment over the end of the marriage and his refusal to allow the children to be in the marital home with mother alone. The court's conclusion was supported by its findings, and the findings were supported by the evidence.

Father also challenges the court's findings of fact underlying its conclusion that mother was the primary caretaker. Factual findings are entitled to deference and will not be overturned unless clearly erroneous. See *Semprebon v. Semprebon*, 157 Vt. 209, 214, 596 A.2d 361, 363 (1991). The court found that mother had been the primary caretaker for the majority of the children's lives because she had been the primary caretaker for Alexandra, born in 1992, for five years at the time of separation, although father had been the primary caretaker for eighteen months after the temporary order. Similarly, the court found that mother had been the primary caretaker for Keenan, born in 1995, for two years before the separation, and father for eighteen months under the temporary order. Further, the court noted that the parties had agreed in November 1997 that mother would continue to be the primary caretaker, and found that nothing in her situation in Warren prevented her from filling that role. The court then properly relied on our oft-repeated holding that the primary-care-giver inquiry should focus on all relevant periods of a child's life, not just the period preceding trial. See *Pearson v. Pearson*, 169 Vt. 28, 33, 726 A.2d 71, 74-75 (1999); *Nickerson v. Nickerson*, 158 Vt. 85, 90-91, 605 A.2d 1331, 1334 (1992). The court's finding that mother was the primary caretaker is amply supported by the evidence.

Father next contends that the court erred in considering the amount of time spent in daycare in each custody situation. The court did mention that the children would spend two fewer days in daycare if mother were awarded custody, due to mother's flexible work schedule. This comment, however, followed an exhaustive analysis of the years of care mother had given to both children, the parties' agreement that mother should continue to be the primary care giver, and the fact that mother had expected to continue as the primary care giver and prepared for it by researching housing, schools, and daycare. Such a comment about daycare does not undermine the court's conclusion that the children will be best served by living with their primary caretaker.

The court made mention of mother having been "punished" for her affair. Father argues that the court's "consideration" of punishment was error as custody awards should not be made to punish or reward a parent. We see nothing in the court's decision to support father's theory that mother was awarded custody as some sort of reparation. The court's reference to punishment was in the context of considering whether mother's situation in Warren affected her ability to continue to be the primary caretaker; it was not an independent basis for awarding custody to mother. For the many reasons detailed in its findings, the court determined that there was no reason why mother should not continue as primary caretaker. Mother's position as the children's primary care giver is entitled to great weight unless she is unfit. See *Mansfield v. Mansfield*, 167 Vt. 606, 607, 708 A.2d 579, 581 (1998) (mem.); *Harris v. Harris*, 162

Vt. 174, 178, 647 A.2d 309, 312 (1994). The evidence supports the court's findings regarding the care of the children, and those findings support its conclusion that mother was the primary caretaker. Where the findings are not clearly erroneous and the conclusion is supported by the findings, we will not disturb the court's determination. See *Stickney*, 170 Vt. at 548, 742 A.2d at 1230-31.

Father next argues that the court erred by failing to consider the children's relationship with their Mendon daycare provider under § 665(b)(7). The court below concluded that the relationship with a daycare provider was not one of the relationships intended by § 665(b)(7). The subsection provides that the court may consider "the relationship of the child with any other person who may significantly affect the child." 15 V.S.A. § 665(b)(7). There is nothing, in either the statutory language or our case law, to indicate that the Legislature intended courts to consider daycare providers. Rather, this provision has been interpreted to refer to relatives such as grandparents, siblings, step-parents, or their equivalents. See, e.g., *Harris*, 149 Vt. at 414, 546 A.2d at 212 (holding that court can consider relationship of children to mother's live-in partner under § 665(b)(7)). Because the daycare provider is not a party before this Court and the "relationship" with the children is controlled by economic choices made by parents, we do not believe the Legislature intended courts to consider daycare providers in awarding custody to one parent or another.

Finally, father claims that the property distribution of $14,526 ordered by the court is inequitable because it does not properly account for the source of marital assets nor sufficiently weigh mother's "fault" in having the affair. Both of these contentions are meritless. The family court has broad discretion in making property settlements, and we will uphold its decision, absent abuse or withholding of discretion. See *Milligan v. Milligan*, 158 Vt. 436, 439, 613 A.2d 1281, 1283 (1992).

Father argues that he should have received seventy percent of the marital assets and that mother should have received thirty percent. His analysis of the assets, however, ignores money lent by mother's family as well as underestimates mother's contributions as a homemaker. The court considered all of the parties' assets. It also took into account father's higher earning potential and the fact that the property settlement was in lieu of maintenance. The court specifically concluded that it did not put significant weight on fault in its distribution, noting that marriages fail for many reasons and stating that, based on credible testimony, it could not conclude that the failure was solely mother's fault. Father has failed to show any abuse of discretion in the court's property distribution.

*Affirmed.*