NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 77

No. 2017-355

| | |
|---|---|
| Mar-Rae X. Terino | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Family Division |
| | |
| Thomas F. Bleeks | April Term, 2018 |

Thomas J. Devine, J.

Mar-Rae X. Terino, Pro Se, Windsor, Plaintiff-Appellee.

John B. Loftus, III and C. Justin Sheng of Brannen & Loftus, PLLC, Hanover, New Hampshire, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.  **ROBINSON, J.**   This case calls upon us to consider whether and under what circumstances the family division, in an order relating to parent-child contact, may account for likely future changes in the best interests of a very young child as the child ages—where the child's aging would not itself constitute an <u>unanticipated</u> change of circumstance opening the door to the possibility of modification under 15 V.S.A. § 668.  Father Mar-Rea Terino appeals the family court's denial of his request to include a mechanism in the divorce decree for revisiting parent-child contact for his two-year-old child as the child gets older, particularly as he reaches school age.  In addition, father argues that the family court erred in failing to address various proposals in

his parenting plan. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

¶ 2. The trial court's findings in the final divorce order reflect the following. Mother and father met in February 2011 and married in May 2012. In March 2015, they separated while mother was pregnant with their child. Father and mother had been living in a home co-owned with mother's mother (the child's maternal grandmother), and, upon their separation, father moved into his own mother's home. Mother filed for divorce in June 2015.

¶ 3. In June 2015, shortly before filing for divorce, mother gave birth to the parties' child. Father was present for the birth and began to visit the child at the maternal grandmother's home frequently. Although father provided care for the child during these visits—including changing, bathing, and holding the child—mother was the primary caregiver. She had the child overnight, breastfed, brought him to medical appointments, and provided the lion's share of his day-to-day care. Starting during the summer of 2015 and lasting through 2017, father began to have the child for visits at paternal grandmother's home.

¶ 4. Mother and father's separation and divorce was acrimonious. In August 2015, after attending a case manager conference, the parties reached a temporary agreement to share legal and physical rights and responsibilities for the child. However, only weeks later in September 2015, mother sought to modify the agreement on the ground that she signed it under duress.[1] Father did not have a visit with the child for the next six weeks, apparently because of tension between the parties and his want to avoid further allegations of abuse. Twice in early 2016, mother brought the child to the emergency room with minor injuries after he had visited father—a small scratch near the corner of his eye the first time and a bruise on his thigh the second. She requested that

---

[1] In June 2015, mother filed for a relief from abuse order against father, which the court denied. In its final divorce decree, the family court found that there "is no evidence that [father] engaged in any abusive conduct towards [mother], or otherwise caused her to fear for her safety."

the hospital report the injuries to the Department for Children and Families, which it did while noting that it did not suspect abuse. The court found that mother's "actions in bringing the child for an unnecessary medical exam were motivated more by a desire to assemble evidence to use against [father] than by other considerations."

¶ 5. Between November 2015 and October 2016, when the court held the final divorce hearing, mother cancelled or failed to appear for more than thirty scheduled visits between father and the child. The family court, in its final divorce decree, found that some of these cancellations were for legitimate reasons, while other visits were cancelled "simply because [mother] did not want them to occur." The court found that:

> [Mother] has engaged in a course of conduct whose purpose is to limit or deny [father's] parent-child contact without legitimate justification. The court finds [mother] lacks the ability and disposition to foster a positive relationship and frequent and ongoing parent-child contact between [father] and their child.

¶ 6. On the basis of these and other findings, the court issued a final order, awarding sole physical rights and responsibilities to mother, which father did not contest. In addressing father's request for an award of legal rights and responsibilities for medical decision-making, the court examined the child's best interests under the factors in 15 V.S.A. § 665(b) and ultimately decided to award sole legal decision making to mother based on her status as the primary day-to-day care provider and her previous management of the child's medical care. Regarding parent-child contact, the court emphasized the child's "young age," "the role of [mother] as [the child's] primary care provider and the quality of [the child's] adjustment to his present home, school and community." The court issued a parent-child contact schedule in which the child would be with father Monday, Wednesday, and Sunday from 10 a.m. to 6 p.m. One month after the order, father's contact would expand to an overnight on Sunday, with the child going back to mother by 4 p.m.

3

Monday. And three months after the order, father's visits would expand to include contact from 10 a.m. Sunday through 4 p.m. on Tuesday.[2]

¶ 7. Father subsequently moved for clarification and reconsideration of the divorce decree. V.R.C.P. 59(e). Father attached the proposed parenting plan he had entered as an exhibit during the final divorce hearing.[3] He argued that the decree failed to adopt, or even address, various parent-child contact provisions in his proposed parenting plan regarding transportation, visitation exchange locations, who may be present at exchanges, (future) parent-child telephone contact, and dispute resolution. In addition, since the child was two years old, father requested "clarification of the standard for modifying the parent-child contact order going forward" because "the schedule will necessarily need to be adjusted as [the child] gets older, particularly once he enrolls in kindergarten." Father explained that he would not be able to avail himself of Vermont's statute for modifying custody orders, 15 V.S.A. § 668, "based on [the child's] age and ordinary enrollment in school," since these predictable future eventualities would not be unanticipated.

¶ 8. On August 30, 2017, the court issued an entry order regarding father's motion for clarification and reconsideration. The court declined to provide a specific arrangement for telephone or Skype contact given the child's age, and explained that, under the order, both parents would have contact with the child during the week. Similarly, the court declined to set a school or summer vacation schedule. The court noted that father "loves the child but has not yet provided any extended or sustained care" and it "would be premature and presumptuous to set forth a plan for more extended contact based on the information available now." After originally finding that mother and father lacked the ability to make decisions together, the court "remain[ed] hopeful the

---

[2] The court additionally ordered that father would have the child on Father's Day from 9 a.m. though 6 p.m., the child's birthday for four hours in the afternoon, Christmas Day from 12 p.m. to 6 p.m., Thanksgiving in alternate years from 9 a.m. to 7 p.m., and "other reasonable times as agreed."

[3] Father submitted his proposed parenting plan on a court-issued Form 825.

parties will improve their ability to communicate and work together in the years ahead," but if this turned out not to be the case, then either party could petition to modify parent-child contact under § 668. Regarding medical appointments, the court expected that nonemergency appointments would not occur during father's visits, but if one must occur at this time, father could attend the appointment with mother. The court specified the locale for parent-child contact exchanges between father and mother and declined to limit who could be present.

¶ 9. On August 31, 2017, father moved for further clarification. He argued that the court had still failed to address sections of his proposed parenting plan concerning equal access to medical and school records, relocation, dispute resolution, and cooperation of the parties. Father additionally challenged the court's conclusion that the parties could in the future use § 668 to modify parent-child contact as the child ages because that statute requires an unanticipated change of circumstances. He explained that the child's aging and the parties' continuing inability to reach an agreement to amend parent-child contact would be anticipated future circumstances. In a one-line entry order issued the next day, the could denied father's motion, stating "[t]he order is clear."

¶ 10. On appeal, father argues that the family court erred in (1) failing to include language in the divorce decree that would allow for modification of parent-child contact when the child reached school age without requiring a threshold showing of changed circumstances, and (2) failing to address all issues raised in his Rule 59 motion.[4] We address each argument in turn.

I. Future Modification of Parent-Child Contact

¶ 11. Father argues that the family court abused its discretion in failing to include a mechanism in the divorce decree that would allow him to seek modification of parent-child contact as his two-year-old child ages. He explains that in setting the parent-child contact schedule, the

---

[4] Father does not challenge the award of primary legal or physical parental rights and responsibilities or the parent-child contact schedule.

trial court relied heavily on the child's very young age and issued an order that essentially locks the parties into a parenting arrangement that may be in the child's best interests at his current age, but likely will not be in the future. He argues that the court improperly relied on § 668 as a mechanism for adjusting the parenting arrangement: the statute requires an <u>unanticipated</u> change of circumstance as a threshold to modification and it is <u>anticipated</u> that the child will mature and eventually go to school and that the parties will continue to be unable to agree on parent-child contact, given their acrimonious history.[5]

¶ 12. The family division has broad discretion in parent-child contact decisions, which we will not disturb unless this discretion "was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." <u>Weaver v. Weaver</u>, 2018 VT 38, ¶ 15, __ Vt. __, __ A.3d __ (quotation omitted). However, construction of a statute, such as 15 V.S.A. § 668 is a matter of law that we review without deference. See <u>Heffernan v. Harbeson</u>, 2004 VT 98, ¶ 7, 177 Vt. 239, 861 A.2d 1149 ("Whether the family court properly construed the controlling statutes is a question of law that we review de novo.").

¶ 13. Our assessment of the quandary father raises is framed by three principles that emerge from our caselaw. First, father is correct that the mere fact of aging, including reaching school age, is not generally an unanticipated change of circumstances by itself. Second, the trial court was understandably hesitant to provide for automatic changes in parent-child contact in the distant future. Third, courts can establish the baseline expectations against which a future claim of changed circumstances can be assessed. Considering these three principles, we conclude that

---

[5] Mother did not submit an appellee's brief. In January 2018, however, this Court granted her permission to present oral argument. During mother's oral argument, she seemed to agree in concept with father's argument that the family court should have put a mechanism into the divorce decree to allow the parties to revisit parent-child contract as the child ages. Mother stated that she did not necessarily agree that the parties would need to revisit the order before the child started school, but, since the child was two years old, it did not make sense to lock the parties into a contact order that would last for the next sixteen years of the child's life.

the trial court has the authority to establish a baseline expectation that the parties will reach a new agreement as to the parent-child contact schedule at a specified time, such that their failure to do so constitutes an unanticipated change of circumstances. We consider each of these points in more detail.

¶ 14. First, we agree with father that § 668 may not open the door to modification of parent-child contact based on the mere fact of a child's predictably aging and reaching school age. To modify an order assigning parental rights and responsibilities or parent-child contact, the movant first must show a real, substantial, and unanticipated change of circumstances. § 668(a); see also Weaver, 2018 VT 38, ¶ 18. After meeting this initial threshold, the movant must then demonstrate that the proposed modification is in the child's best interest. § 668(a); see also deBeaumont v. Goodrich, 162 Vt. 91, 95, 644 A.2d 843, 845-46 (1994) (explaining that court does not consider best interests of child until after concluding that there has been substantial change of circumstances). For the purposes of § 668, an unanticipated change is one that was unexpected at the time of the divorce. Sundstrom v. Sundstrom, 2004 VT 106, ¶ 35, 177 Vt. 577, 865 A.2d 358 (mem.).

¶ 15. Pursuant to these principles, the facts that an infant has grown older, is less dependent on the primary care provider, uses communication devices that were not practicable for the child at the time of the final divorce, or has begun school, may not, standing alone, constitute unanticipated changes of circumstance opening the door to modification pursuant to § 668. As we have explained, "a child's maturation from dependent infant to increasingly autonomous and active school-aged child, rather than being unanticipated, is a welcome and expected fact of life." Pigeon v. Pigeon, 173 Vt. 464, 466, 782 A.2d 1236, 1238 (2001) (mem.); see also Knutsen v. Cegalis, 2009 VT 110, ¶ 34, 187 Vt. 99, 989 A.2d 1010 (Dooley, J., dissenting) (citing Pigeon for proposition that child's future attendance at school is anticipated event).

7

¶ 16.    Second, assuming without deciding that the trial court could do so, the court here had good reason to decline to impose a provision that automatically shifts parent-child contact when the child reaches school age.  As the trial court stated here, it would have been "premature and presumptuous to set forth a plan for more extended contact based on the information" currently available to the parties.  Cf. Knutsen, 2009 VT 110, ¶ 10 (rejecting provision in custody order that granted parental rights and responsibilities to mother until child began to attend kindergarten, at which point rights would switch to father for rest of child's minority, because "changes in custody must be based on real-time determinations of a child's best interests" and "variables are simply too unfixed to determine at the time of a final divorce decree what the circumstances of the parties will be at the time a future contingency occurs").

¶ 17.    Finally, this Court has recognized that a trial court may establish a reasonable baseline against which future claims of changed circumstances can be assessed.  In deBeaumont, this Court upheld a provision in a divorce decree stating that either party moving more than fifty miles from their current home would constitute a change of circumstances authorizing the court to revisit parent-child contact.  162 Vt. at 94-96, 644 A.2d at 845-46.  The Court explained that while "[t]here is no specific statutory authority for the divorce order to define changed circumstances for purposes of a future modification," the provision was acceptable because (1) the order was based on a stipulation of the parties; and (2) "the provision established a reasonable benchmark to determine changed circumstances" where the contact schedule for the children was nearly equal.  Id. at 96, 644 A.2d at 846.  We explained that the provision "specif[ied] the expectations of the parties with respect to their living arrangements at the time of the divorce," representing "the baseline for determining when changes are anticipated and are real and substantial."  Id. at 96 n.2, 644 A.2d at 846 n.2.

¶ 18.    On the other hand, in Gazo v. Gazo, this Court struck down an order that allowed the family court to automatically revisit parental rights and responsibilities if the mother moved

8

from her town. 166 Vt. 434, 697 A.2d 342 (1997). In that case, the court awarded physical rights and responsibilities to mother, who had been offered a job in Michigan. We explained that "[t]he provision does not set a reasonable benchmark to determine changed circumstances, since any move out of the [town] area, of any distance, would be considered a substantial change." Id. at 440, 697 A.2d at 345. Our analysis hinged in large part on the order's inconsistency with our law governing changes in parental rights and responsibilities upon relocation of the custodial parent.

¶ 19. We draw three lessons from the above authority for the present case. First, to the extent that the trial court concluded that father could rely on § 668 to avoid being bound for the duration of the child's minority to a contact schedule developed with a specific focus on the needs of an infant, that legal assessment was not supported by our caselaw. Second, the trial court in this case was appropriately reluctant to issue an order that would require speculating today about the child's likely best interests several years down the road. Third, in this circumstance, the trial court has the discretion to establish reasonable expectations, consistent with the evidence and law, against which future claims of changed circumstances may be measured.

¶ 20. The third point is the key to this case. Ordinarily, recognizing the goals of stability for the child, finality of court orders, and predictability for the parties, courts in contested custody and visitation matters do their best to craft orders that will serve the best interests of the child indefinitely. As noted above, these orders may only be set aside, and the court may only revisit the child's best interests, if unanticipated changes in circumstances arise. But in some cases, a court may anticipate that a parent-child contact schedule, which was developed specifically to meet present needs that the child will predictably outgrow, may be ill suited to the child's best interests at an identified future time—such as the beginning of school. In such cases, the trial court cannot prejudge the child's best interests at that future time. The court may, however, establish the expectation that the parties will revisit the schedule, through their own negotiation or mediation if necessary, to ensure that it meets the child's bests interests in that predictable next stage of a child's

9

life. The parties' failure to reach an agreement at that time may be an unanticipated change of circumstances. We conclude that courts have the discretion to include such a provision, but should do so sparingly and with an articulated rationale.[6]

¶ 21. In this case, the family division ruled that the parties could rely on § 668 to modify parent-child contact as the child ages. Because this conclusion was legally incorrect for the reasons noted above, the trial court exceeded its discretion in relying on this consideration. See Spooner v. Town of Topsham, 2010 VT 71, ¶ 7, 188 Vt. 293, 9 A.3d 672 ("When a trial court commits an error of law, it is an abuse of discretion."). Accordingly, we remand so that the trial court can revisit its order in light of this opinion. On remand, the trial court is not bound to exercise its discretion to include a provision of the sort described above.

## II. Motion for Clarification and Reconsideration

¶ 22. Father argues that, in the absence of creating a parenting plan or adopting his proposed parenting plan, the family court abused its discretion in failing to address each item addressed in the parenting plan he offered the trial court. He notes that "each of his requests for relief was within the broad discretion of the trial court" and "[i]f the Family Division had made orders regarding his requests, those orders would have been entitled to substantial deference." But, father contends, since the court simply disregarded his requests, it abused its discretion. Father's brief does not actually specify which requests for relief he contends the court ignored, but his second Rule 59(e) motion identifies his requests concerning equal access to school and medical records, relocation, cooperation of the parties, and dispute resolution.

¶ 23. We conclude that the court did not abuse its discretion in failing to specifically address these items in father's proposed parenting plan. We note at the outset that the trial court

---

[6] We reiterate that the mere passage of time alone does not create a real, substantial, and unanticipated change of circumstances, but passage of time coupled with unanticipated changed needs of the child could potentially create a substantial, unanticipated change of circumstances adequate to amend the custody or contact order under § 668.

is not obligated to issue a decision that tracks the "parenting plan" form provided by the Judiciary for the benefit of parties and offered by father in this case as the embodiment of his various proposals. Moreover, we note that father's access to school and medical records is generally protected by statute, even absent any order by the court. See 15 V.S.A. § 670. Further, the trial court was not obligated to adopt father's proposal attempting to address in advance relocation issues, including requiring reasonable advance notice. These matters, too, are governed by applicable statutes and caselaw, and the trial court is not required to address them. Finally, although the trial court had the discretion to incorporate provisions regarding dispute resolution between mother and father, it was not required to do so. If, on remand, the trial court elects to address the matter, it may do so, but its silence on this question does not amount to an abuse of discretion.

Affirmed in part, reversed in part, and remanded.

FOR THE COURT:

_____

Associate Justice

11