NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 36

No. 23-AP-253

| | |
|---|---|
| Damon Graham | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Isiwat Adekoya | February Term, 2024 |

Kirstin K. Schoonover, J.

Jacob Oblak of Henchen & Oblak, LLP, Waterbury, for Plaintiff-Appellant.

Stacey Adamski of Adamski Law, PLLC, Castleton, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.   **COHEN, J.** Father Damon Graham appeals from an order of the family division granting mother Isiwat Adekoya primary parental rights and responsibilities (PRR) with respect to their child and setting forth a schedule for parent-child contact (PCC). Father claims that the family court abused its discretion by allowing mother to control father's PCC time with the child. He further argues that the court abused its discretion by imposing a provision requiring the parties to renegotiate PCC as the child reached school age, because the provision was premised on mother's decision to enroll the child in preschool. Finally, he claims that the order improperly constrained the court's future ability to modify the PCC schedule based on the child's best interests. We affirm.

¶ 2.     The following facts are drawn from the family court's order.  Father, a resident of Vermont, met mother in February 2021 while mother was in her senior year at a college in New York.  Soon after becoming pregnant, mother moved into father's home in Vermont.  Their child was born in October 2021.  By the time of the child's birth, the relationship between father and mother had become strained.  In November 2021, mother's family came to Vermont for a visit, whereupon mother unexpectedly decided to leave father's household and return to her family's home in New York.  Father became angry, smashing his head into the back window of her family's rental car and shattering it.  He begged mother to stay, but she left with the child.  Shortly thereafter, father drove mother's belongings to New York and visited the child.

¶ 3.     In December 2021, mother returned with the child to Vermont for a holiday visit and remained there until January 2022.  During that visit, mother informed father of her decision to move to Texas with her family.  An altercation later ensued, and mother determined that her relationship with father had permanently ended.

¶ 4.     In February 2022, father filed the underlying parentage complaint.  Two months later, the parties reached a stipulated, temporary PCC schedule agreeing to equally share PCC in alternating two-week increments.  The family court approved that PCC arrangement.  By November 2022, mother had graduated college and moved with her family and the child to Texas.

¶ 5.     After mother and the child moved to Texas, the PCC schedule continued, with the parties exchanging the child every two weeks at John F. Kennedy Airport in New York City.  To make that exchange, father flew directly from Vermont to that airport while mother flew directly from Texas to LaGuardia Airport.  She then drove to meet father and, because the flight schedules prevented her from returning that same day, would stay overnight in New York before returning to Texas the next day.  The family court observed that this was "an unusual parent child contact schedule for one so young," but found that the child "has been flying between the parents for much of her young life without any evident distress."

¶ 6.    In May 2023, the family court issued a final order on PRR and PCC. With parents refusing to share PRR, the court awarded PRR to mother after weighing the factors set forth in 15 V.S.A. § 665(b).

¶ 7.    As for PCC, the court found that the alternating, biweekly schedule was currently in the child's best interests. It explained that the child had a strong bond with both parents and their extended families, and that the child had adjusted well to the existing schedule. Although the court found no compelling reason to change the PCC schedule while the child was very young, it recognized that maintaining this schedule indefinitely was not feasible given the considerable physical distance separating the parents. It concluded that a change was inevitable once the child started preschool.

¶ 8.    Thus, the family court ordered that the current PCC schedule would continue until the child entered preschool, when the PCC schedule would automatically change to the following: (1) during the school year, father would have one week per month with the child in Texas; (2) father would have the child for most of summer vacation, with the schedule shifting slightly upon the child entering third grade; (3) father would have the child for both February and April school vacations, and; (4) parents would alternate PCC with the child for Thanksgiving and the winter holiday vacation.

¶ 9.    In June 2023, father moved to alter or amend the May 2023 order. Father argued that an automatic future modification of the PCC schedule upon the child entering preschool was based only on presently known information and therefore improperly circumvented 15 V.S.A. § 668(a). Furthermore, father argued that the decision to enroll the child in preschool is discretionary, and that the order shifting the schedule to accommodate such a discretionary decision impermissibly encroached upon father's time with the child. Father contended that the order effectively gave mother unilateral control over when the change in PCC would occur. Father therefore asked the court to adopt a benchmark for determining changed circumstances for

3

purposes of future modification of the PCC order when the child entered kindergarten, as a predictable and nondiscretionary event, pursuant to this Court's decision in Terino v. Bleeks, 2018 VT 77, 208 Vt. 65, 195 A.3d 647.[1]

¶ 10. In July 2023, the family court issued an order partially granting father's motion. The court agreed that, pursuant to Terino and Knutsen v.Cegalis, 2009 VT 110, 187 Vt. 99, 989 A.2d 1010, it could not order an automatic modification in PCC for an anticipated change in circumstances and without knowing the child's best interests at the time of that change. It therefore vacated the part of its order addressing father's future PCC and amended the order in two ways. First, the court found that the existing PCC schedule was currently in the child's best interests. Second, the court required the parties to "confer and, within a reasonable timeframe, come to an agreement" on father's PCC. The parties were to do so "[o]nce [the child] enters a certified preschool program, or age [four], whichever occurs later, OR, if [m]other does not enroll [the child] in preschool, then when [the child] starts kindergarten." The court ordered the parties to mediate if they failed to reach an agreement. It further ordered that because the parties had thus far cooperated in scheduling PCC, "the [c]ourt would consider their inability to reach [an] agreement a real, substantial, and unanticipated change in circumstances."

¶ 11. In reaching this decision, the family court rejected father's argument that the award of PRR to mother did not give her the right to enroll the child in preschool. It reasoned that mother had been awarded sole legal rights and responsibilities and, as such, she had the right to make decisions affecting the child's welfare and education. This appeal followed.

¶ 12. The family division has broad discretion to make decisions regarding PCC, and we will not disturb those decisions "unless this discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Terino, 2018 VT

---

[1] In the alternative, father moved to amend the future schedule. Mother opposed father's motion in its entirety.

4

77, ¶ 12 (quotation omitted). We will uphold the court's findings if supported by the evidence "and will affirm its legal conclusions if supported by the findings." Weaver v. Weaver, 2018 VT 38, ¶ 15, 207 Vt. 236, 186 A.3d 1119.

¶ 13. Father first argues that the family court abused its discretion because the PCC order permits mother to dictate father's childcare choices when the child is with father. As indicated above, father asserted in his motion to alter or amend the original PCC order that mother did not have the legal right to enroll the child in daycare or preschool. The court rejected this argument, stating that mother, having been awarded sole legal and physical PRR, had the right to make decisions regarding the child's daycare, preschool, or elementary school. It explained that under 15 V.S.A. § 664(1)(A), "[m]other, having legal rights and responsibilities, has the right to determine and control matters affecting the child's welfare." Father interprets these statements as expanding mother's rights to allow her to intrude upon father's PCC time by permitting her to control daily childcare decisions during the child's time with father. See Miller v. Smith, 2009 VT 120, ¶ 6, 187 Vt. 574, 989 A.2d 537 (mem.) (holding that while court "may impose conditions on visitation if clearly required by the child's best interests," custodial parent cannot unilaterally impose restrictions on noncustodial parent's PCC time with child).

¶ 14. Father misconstrues the court's statements. The court simply explained that mother, as the parent with sole legal PRR, has the right to make certain decisions for the child's welfare and upbringing. See 15 V.S.A. § 664(1)(A) (stating that legal responsibility means right to determine and control matters affecting child's welfare and upbringing, including education). Contrary to father's contention, the court did not suggest that mother could dictate how father spends his PCC time with the child or control the child's daily routine or father's choice of childcare. See Patnode v. Urette, 2017 VT 107, ¶¶ 12-13, 206 Vt. 212, 179 A.3d 1242 (holding that custodial parent "cannot control how [noncustodial parent] and child spend their [PCC]" by having "unilateral authority to veto activities for the child" during child's time with noncustodial

5

parent). By responding to father's argument, the court did nothing more than explain that mother had the right to choose when the child entered preschool; it did not purport to give mother the power to control childcare decisions when the child was with father under the current PCC schedule.

¶ 15. Father proposes that mother might interpret the court's remarks as he does and, if so, could improperly exercise unilateral control of his PCC by dictating where and when the child must attend childcare when the child is with him. Father's concerns, however, are purely speculative. There is no evidence that mother has sought to dictate the terms of father's PCC by controlling the child's daily routine during the child's time with father. We therefore decline to disturb the order on this basis.[2] See Shea v. Metcalf, 167 Vt. 494, 502, 712 A.2d 887, 892 (1998) ("We will not judge the efficacy of a family court's order on circumstances that could potentially arise in the future.").

¶ 16. Father also claims that the family court abused its discretion by imposing a provision for assessing future changed circumstances that is premised on mother's decision to enroll the child in preschool. He argues that the provision impermissibly gives mother unilateral authority to trigger modification of the PCC order by making the discretionary decision to put the child into an optional certified prekindergarten program. Father argues that the provision is inconsistent with this Court's decision in Terino v. Bleeks.

¶ 17. In Terino, the trial court awarded PRR of an infant child to the mother and awarded the father three days of visitation per week. The court acknowledged that this schedule might prove unsuitable for the child in the future and expected the parties to agree to a new PCC schedule

---

[2] As a general matter, we agree that a noncustodial parent has the right to make routine childcare decisions during that parent's time with the child pursuant to a PCC schedule without interference from the custodial parent. Cf. Miller, 2009 VT 120, ¶ 7 (recognizing that parent with sole PRR does not have "the right to control the child's activities" during child's visitation with noncustodial parent).

when the child entered kindergarten. If they could not, it stated that the parties could petition to modify the PCC order under 15 V.S.A. § 668. The father argued that the child aging and entering kindergarten were anticipated circumstances that could not justify modification of a PCC order under § 668. The father claimed that the court should have included a mechanism in the divorce decree that would allow him to seek modification as the child aged.

¶ 18. In examining the propriety of the order's forward-looking provision, this Court made three key observations. First, we noted that because § 668 requires a showing of an unanticipated change in circumstances, that statute "may not open the door to modification of parent-child contact based on the mere fact of a child's predictably aging and reaching school age." Terino, 2018 VT 77, ¶ 14. Second, even if it could do so, the lower court "had good reason to decline to impose a provision that automatically shifts parent-child contact when the child reaches school age" because it could not predict a PCC schedule that would serve the child's best interests based only on presently available information. Id. ¶¶ 16, 19. Finally, a "trial court has the discretion to establish reasonable expectations, consistent with the evidence and law, against which future claims of changed circumstances may be measured." Id. ¶ 19. That is so because "in some cases, a court may anticipate that a [PCC] schedule, which was developed specifically to meet present needs that the child will predictably outgrow, may be ill suited to the child's best interests at an identified future time—such as the beginning of school." Id. ¶ 20. When those circumstances arise, a court can "establish the expectation that the parties will revisit the schedule, through their own negotiation or mediation if necessary, to ensure that it meets the child's best interests in that predictable next stage of a child's life." Id. A court may thus define the parties' failure to meet that expectation as an unanticipated change of circumstances.[3] Id. We accordingly remanded for the court to reconsider its order in light of these principles. Id. ¶ 21.

---

[3] While Terino permitted this type of provision in PCC orders, it cautioned that courts "should do so sparingly and with an articulated rationale." 2018 VT 77, ¶ 20.

¶ 19. Here, the family court found that the present arrangement of alternating two-week periods with each parent was, "for the moment," in the child's best interests; but when the child begins preschool or elementary school, "the existing schedule will not be tenable." The court expressed doubt that the current schedule would serve the child's best interests in the future given the child's age, the distance between the parties, and the need for the child to form relationships with friends and teachers. See id. ¶ 20 (stating trial court may anticipate present PCC schedule "may be ill suited to the child's best interests at an identified future time—such as starting school"). The court therefore required the parties to revisit the PCC schedule upon the later of two events, namely, the child entering preschool or reaching the age of four (or kindergarten if the child does not enter preschool). See id. (providing that court may "establish the expectation that the parties will revisit the schedule, through their own negotiation or mediation if necessary"). Since the parties had historically cooperated in scheduling the child's PCC, the court ordered that their failure to reach such an agreement would constitute "a real, substantial, and unanticipated change in circumstances." See id. ("The parties' failure to reach an agreement . . . may be an unanticipated change of circumstances.").

¶ 20. Under these circumstances, the court did not err by making mother's decision to enroll the child in a certified preschool program part of a benchmark for determining changed circumstances. To start, it does not, as father argues, provide mother with unilateral authority to alter the PCC schedule by enrolling the child in preschool. Father ignores the accompanying language, which provides an expectation that the parties will revisit the schedule when mother enrolls the child in preschool or the child reaches the age of four, whichever is later. In other words, if mother enrolls the child in preschool there is no obligation to reconsider PCC until the child turns four. And if mother does not enroll the child in preschool, the provision is not triggered until the child enters kindergarten. As the parent with sole legal rights and responsibilities, mother has the right to decide when the child enters school. See 15 V.S.A. § 664(1)(A) (including right

8

to make educational decisions as component of "legal responsibility"); see also Weaver, 2018 VT 38, ¶ 28 (explaining that as parent with sole legal rights and responsibilities, father was responsible for all decisions regarding child's education needs); In re G.M., 2017-Ohio-8144, ¶ 23, 98 N.E.3d 795 (Ct. App.) (holding that mother's decision to enroll child in preschool was component of her "schooling rights as the custodial parent"). By deferring reconsideration of PCC until the child reaches the age of four (or enters kindergarten, if mother declines to enroll the child in preschool), the court balanced mother's right with the need to maximize father's PCC.[4] See Lane v. Schenck, 158 Vt. 489, 499, 614 A.2d 786, 791 (1992) ("While the policy promoting visitation must be considered, concerns relating to it must not overshadow the proper role of the custodial parent."). The court was well within its discretion to take this approach based on the underlying circumstances.

¶ 21. Moreover, the family court had an evidentiary basis to conclude that the child's entrance to a certified preschool program was a proper future point for the parties to reconsider the PCC schedule. In her testimony, mother expressed her plan to enroll the child in a public preschool in Texas. She explained that, as a learning institution, a Texas public preschool program would help prepare the child for matriculation and assist the child in entering kindergarten early, based on the child's development. The court believed that enrollment in a certified preschool was therefore an appropriate point in time at which the parties should reconsider the PCC schedule, which is why it "asked the question about preschool." Its concern that the current schedule would be "tough" to maintain when that time arrived was well founded. See In re Marriage of Oros, 627 N.E.2d 1246, 1249 (Ill. App. Ct. 1994) (observing that equal custody arrangement of infant child

---

[4] We again "reiterate that the mere passage of time alone does not create a real, substantial, and unanticipated change of circumstances, but passage of time coupled with unanticipated changed needs of the child could potentially create a substantial, unanticipated change of circumstances adequate to amend the custody or contact order under [15 V.S.A.] § 668." Terino, 2018 VT 77, ¶ 20 n.6.

led to "a merry-go-round of changing preschools, doctors, playmates, households and environments," increasing risk that child will foster "deepening insecurity and a sense of transience in all social relationships").

¶ 22. Here, the court was presented with evidence that mother intended to enroll the child in a public preschool program in Texas to further the child's development. It also heard evidence on how a preschool program would assist the child's growth. Based on that evidence, the court determined that the child's enrollment in preschool was an appropriate benchmark for reconsidering PCC. It explained that when the child eventually reaches that benchmark, the child "will need to settle into a stable routine in her community" which will involve the "need to make friends, establish relationships with teachers, and develop community." Given the considerable distance separating the parents, the existing schedule would "not be tenable" to adequately serve the child in those areas of development. The court's articulated rationale for the provision governing modification was based on the evidence before it and, accordingly, was a proper exercise of its discretion.[5] Terino, 2018 VT 77, ¶ 20 (holding that court has discretion "to include such a provision" so long as that discretion is exercised "sparingly and with an articulated rationale").

¶ 23. That preschool is voluntary, unlike kindergarten, does not alter the outcome under these unique circumstances. As we observed in Terino, some cases may involve an existing PCC schedule that, while currently appropriate, will be ill suited to a child's best interests at a specific time in the future. Id. An example we gave was "the beginning of school." Id. Therefore, a court may expect that the parties will agree to a new PCC schedule when a child reaches that "predictable next stage." Id. While preschool attendance may not be mandatory, at least in Vermont, it is a

---

[5] In reaching this conclusion, we stress that our holding today is limited to the unique facts of this case and is not intended to indicate that a provision premising modification of PCC on a child's enrollment in preschool is acceptable in every situation. Nor do we settle any differences between "preschool," "daycare," or "childcare."

common step in childhood development. Father cites no authority for the proposition that legal decisions concerning education only involve government-mandated schooling. While father relies on Trahnstrom v. Trahnstrom, that matter is inapposite because at issue there was whether the trial court properly ignored the child's relationship with a daycare provider in awarding PRR to the mother. 171 Vt. 507, 509, 756 A.2d 1242, 1245-46 (2000) (mem.). We held only that the court did not err by refusing to consider the relationship under 15 V.S.A. § 665(b)(7) since the provider was not a party and the relationship was controlled by the parents' economic choices. Trahnstrom, 171 Vt. at 509, 756 A.2d at 1245-46. That holding does not bear on the issue presently before us.

¶ 24. Finally, father claims that the family court improperly ruled on a future PCC schedule. The basis of his claim is the court's statement that it would not support what it viewed as father's proposal to give father contact during the school year with mother having contact during the summer and school breaks. The court stated that doing so would be contrary to its award to mother of sole legal and physical rights and responsibilities. Father argues that, by opining on this topic, the court effectively prejudged the child's best interests, thereby inhibiting a future court's ability to craft a schedule once the child enters school.

¶ 25. We disagree. Father places too much weight on a two-sentence response to an argument that the court seems to have misinterpreted. In his motion to alter or amend the PCC order, father argued that the court should "leave the future analysis as to which parent should have schooltime contact versus the holiday/summer/vacation contact to a future trial court." The court apparently construed father's argument as a proposal to award him contact during the school year.[6]

---

[6] The court correctly noted that to give the bulk of PCC to father would contravene its award of PRR to mother. As we have previously observed, an award of sole PRR to one parent would have "little to no actual meaning" if the PCC order granted the other parent more than half of the time with a child. Barrows v. Easton, 2020 VT 2, ¶ 15, 211 Vt. 354, 227 A.3d 1030. Indeed, "it is difficult to discern what an award of physical rights and responsibilities to [one parent] even means . . . where [the other parent] has the lion's share of the time with the child," and we have therefore refused to endorse such internally inconsistent orders. Id. ¶¶ 14-18.

While we agree that the court "cannot prejudge the child's best interests" before the child enters school, Terino, 2018 VT 77, ¶ 20, we do not believe the court attempted to do so here. The language of the PCC order expressly left that task to a future court should the parties fail to agree on a PCC arrangement once the child is in preschool, turns four years old or, alternatively, enters kindergarten. That language controls. Thus, even if the court's remark was error in this context, it was not integral to its ultimate ruling on PCC. See Peckham v. Peckham, 149 Vt. 388, 390, 543 A.2d 267, 269 (1988) (holding that erroneous findings were not essential to court's decision to award custody and therefore "does not require reversal"). If asked to create a new PCC schedule, the family court will assess the child's best interests based on the facts and circumstances existing at that time.

Affirmed.

FOR THE COURT:

_____
Associate Justice