VERMONT SUPREME COURT

109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     25-AP-014



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2025

Michael Halley v. Danielle Francoeur*   }   APPEALED FROM:
                                        }
                                        }   Superior Court, Windsor Unit,
                                        }   Family Division
                                        }   CASE NO. 22-DM-03074
                                            Trial Judge: Lisa Warren

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's final divorce order. She challenges the court's award of primary physical and legal parental rights and responsibilities (PRR) in the parties' children to father and the parent-child contact (PCC) schedule. We affirm.

The trial court made numerous findings after a hearing, including the following. The parties married in November 2016 and separated in November 2022. Mother is thirty-four years old, and father is thirty-three years old. They have two sons, born in 2017 and 2019. At the time of the divorce order, father was living in the marital home in Springfield, Vermont, which the parties agreed to sell. Father was in a new relationship and expecting a child with his new partner. Father and his new partner secured housing in Claremont, New Hampshire, where they planned to live upon sale of the marital home. The home had a bedroom for the boys.

Father was the primary wage-earner during the marriage. He earns a stable income and can provide for the children's material needs and provide them with a safe environment. Father served for six years with the Vermont National Guard as a combat medic. He currently works for an ambulance service. Mother was the children's primary caregiver during the marriage. She worked full-time as a nurse before father's first deployment with the National Guard. After the parties' eldest son was born in 2017, she worked two shifts per month to retain her job. Mother now lives in Orange County, New York, where she works as a nurse.

During the marriage, both parties played video games and streamed. Mother often gamed at night, beginning at 5:00 p.m. and sometimes continuing until 5:00 a.m. the following morning. In the latter part of the marriage, mother ran a quasi-BDSM channel on Twitch for people to watch her game and chat. She took on a dominatrix-style persona and used provocative language. Mother began making income playing games and she continues to use Twitch. She posted pictures of herself on Instagram wearing fantasy outfits, and the children were in some of her photos.

By 2021-2022, mother was frequently distant with father and the parties argued occasionally. Father was sometimes less patient and more aggressive when he returned from his National Guard deployments. He talked about killing people and exhibited dark humor. Mother asked him to stop. She tried to communicate with him but he shut down. On one occasion in the fall of 2022, father became agitated when mother did not want to try some food he was cooking, and he made a statement about injecting her with potassium chloride. Another time, father made a statement about leaving her with a cardboard box. In the late summer/early fall of 2022, mother showed a friend a Snapchat message in which husband referenced injecting her veins with potassium so she would have a heart attack and die in her sleep. The friend told mother she should leave and suggested contacting a local women's agency to see if they could help.

Several months later, during the week of Thanksgiving, mother left the marital home with the children while father was at work. Father tried unsuccessfully to reach her. When father checked the parties' joint bank account, it was overdrawn by $1800. Mother also withdrew $19,000 from a bank account in her name. Mother sent father a message that she left with the boys but did not say where she was going or if she would be back; she did not make any allegations about why she left. Mother took the boys to New York and lived on property owned by a couple, the Sloanhoffers, whom mother met through gaming on Twitch. Mother engaged in a relationship with the couple's son. The son lived with mother and the boys in an in-law suite on the Sloanhoffers' property.

Shortly after mother left Vermont, father was served with a temporary protective order from New York that prevented him from seeing the children. Mother did not allege that father physically abused her. Mother called father on several occasions and left phone messages indicating that she wanted to return. She suggested to the boys that father had kicked her out of the home. In August 2023, the Sloanhoffers' son assaulted mother, and mother relocated with the boys to South Carolina to live with her mother and sister. Mother soon had a falling out with her mother; her mother expressed concern about mother's behavior and treatment of the children. Mother returned to New York and again lives in housing paid for by the Sloanhoffers. The Sloanhoffers help mother financially in other ways as well. The court noted that mother at no time sought help from her father, who lives in Vermont.

The New York temporary protective order was in place for almost one year. In October 2023, father stipulated to a final protective order without findings in New York; the New York court deferred to Vermont to decide parent-child contact. Father's main concern was seeing the children again as he had not seen them since November 2022. Father resumed in-person contact with the children in January 2024 after he moved for temporary PCC.

The court made findings about the boys and their close relationship with father's family and friends, as well as with their friends in Vermont. It found that the children also made friends in New York. The court made numerous additional findings that we do not recount here.

Each parent sought primary PRR and the court considered the best-interest factors set forth in 15 V.S.A. § 665 to evaluate their requests. It found that both parents had a close relationship with the children and could provide them with love, affection, and guidance. Father was better able than mother, however, to ensure that the children lived in a safe environment. The court emphasized mother's multiple moves and her current living situation. The court also determined that father was better able to meet the children's present and future developmental needs, noting that mother uprooted the parties' young children from their home and community, unannounced, to move to New York with people she met online, who were total strangers to the

children. Mother then relocated to South Carolina after being assaulted by the Sloanhoffer's son, intending to live there. She had a falling out with her mother, returned to New York and reengaged with the Sloanhoffers. After her return, the court found that mother made it difficult for father to obtain information about the children's education. The court found that mother demonstrated poor insight into the children's need for stability. It further found that the children had close relationships with family and friends in the Springfield, Vermont area, where they had lived all their lives before the various moves initiated by mother within a relatively short period. The court considered father better able than mother to foster a positive relationship and frequent and continuing contact between mother and the children. The court recognized that mother had been the children's primary care provider since birth, but it was also mindful that the children had a close bond with both parties. The children's positive and strong relationship with father's large family and father's girlfriend weighed very heavily in father's favor. Finally, the court noted that there was no evidence presented at the hearing as to any effect that father's statements to mother, referenced above, had on the children. It thus concluded that the factor concerning the impact of any abuse on the children did not favor either party.

Based on the analysis above, and particularly, the stability that father demonstrated since the parties' separation and his ability to provide that stability for the children, the court concluded that awarding PRR to father was in the children's best interests. The court awarded mother PCC every other weekend, which would run through Monday afternoon if there was a Monday holiday. The court also set forth a specific schedule for PCC during other holidays and school vacations.

Mother moved to reopen the evidence and amend the court's decision. She asserted that she was now "extremely likely" to move near father so she could be near the children, and she asked the court to order an alternative PCC schedule, effectively a 50/50 split, in the event she returned to Vermont. Alternatively, she asked the court to predetermine that if she returned to Vermont, it would be a change in circumstances and to order the parties to engage in mediation. Mother further asserted that father planned to move to New Hampshire and she asked to have the evidence reopened to hear evidence about "[f]ather's plans, machinations, and/or bad faith dishonest testimony about his stability in order to make a fair, just, and equitable ruling that is in these children's best interests." Father opposed the motion. He noted that he had presented evidence, and the court found, that he would be moving to New Hampshire when the marital home was sold. He asserted that mother sought "to raise arguments and present evidence that could have been raised prior to the judgment simply because she [did] not like the outcome."

The court denied mother's motion, emphasizing the narrow purpose of Vermont Rule of Civil Procedure 59(e). As the court explained, such motions were not a vehicle to raise arguments that could have been raised prior to the entry of judgment, or to relitigate issues already decided. The court stated that both parties presented extensive evidence during the final hearing. Mother could have presented evidence on a possible or prospective return to Vermont but she chose not to do so. "[A]ny supposed mistake in a judgment due to a party's own fault or neglect is outside the power of Rule 59(e) to correct." Gregory v. Poulin Auto Sales, Inc., 2012 VT 28, ¶ 19, 191 Vt. 611 (mem.) (quotation omitted) (citing N. Sec. Ins. Co. v. Mitec Elecs., Ltd., 2008 VT 96, ¶ 45, 184 Vt. 303). Accordingly, the court found no basis to reopen the evidence and amend the judgment. Mother now appeals.

Mother first argues that the court erred in assessing several of the statutory best-interest factors. Specifically, she challenges the court's conclusion that father could better "foster a positive relationship and frequent and continuing contact with the other parent." 15 V.S.A.

§ 665(b)(5). She also asserts that it was internally inconsistent for the court not to find "evidence of abuse, as defined in [15 V.S.A.] section 1101" that had an impact on the children and the children's relationship with the "abusing parent." Id. § 665(b)(9). She maintains that this is contradictory because the court faulted her for deciding "to remove herself from the abusive relationship." Mother argues that she acted reasonably in fleeing these situations and obtaining a protective order, even if the result was denying father access to the children for over a year. She provides her view of the evidence in support of these arguments. Mother also argues that there was nothing wrong with accepting housing and other assistance from the Sloanhoffers. Mother contends that she did not exhibit instability or unpredictability, as the trial court found.[*]

At the outset, we emphasize that we are reviewing the findings and conclusions made by the trial court in its final divorce order, not mother's testimony or her characterization of the evidence. The court did not find that mother fled Vermont to escape an abusive relationship. Mother's reference to her own testimony, in large part from a hearing on temporary orders, does not establish the "facts" of this case, as she asserts.

As set forth above, the court concluded that five out of seven applicable best-interest factors favored awarding PRR to father. It emphasized the children's positive and strong relationship with father's large family and his girlfriend, as well as other relatives. It credited father's commitment to fostering a positive relationship with the children and mother through regular routine PCC and generous summertime contact, which father proposed to be on a two-week-on, two-week-off schedule. It appropriately considered the effect of mother's relocations on the children and the children's need for stability. The court did not fault mother for her decisions to relocate several times, moreover, but rather assessed the effect of her actions on the children. Mother essentially asks this Court to draw certain inferences from the court's findings, but that is not our role. We do not reweigh the evidence on appeal. We leave it to the trial court to evaluate the credibility of witnesses and weigh the evidence. Kanaan v. Kanaan, 163 Vt. 402, 405 (1995). The court acted within its discretion in concluding that mother's multiple moves with the children, including to live on a property in New York with a couple the children had never met, demonstrated poor insight into the children's need for stability. "The family court has broad discretion in determining what allocation of parental rights and responsibilities is in a child's best interests," LeBlanc v. LeBlanc, 2014 VT 65, ¶ 21, 197 Vt. 17, and mother fails to show an abuse of discretion here.

Mother next challenges the court's PCC order. She asserts that the court failed to explain why it adopted the schedule father proposed. Mother acknowledges that the equal schedule she proposed was not possible if she lived in New York, but suggests that the court should have considered the possibility that she might relocate closer to father.

_____

[*] In her brief, mother references a motion she filed that post-dates the order on appeal. This information is not properly before the Court and we do not consider it. See Hoover v. Hoover, 171 Vt. 256, 258 (2000) ("[O]ur review is confined to the record and evidence adduced at trial. On appeal, we cannot consider facts not in the record."). We similarly do not consider findings in a temporary order regarding father's February 2023 request to return the children to Vermont and mother's request for spousal support order, cited by mother. These rulings were superseded by the final divorce order, which is the order on appeal. In any event, mother overstates the findings in the temporary order. The court found in that order that as the primary caregiver, mother could leave Vermont with the children, and it declined to issue a temporary order on parenting time for father because father made his request orally at the hearing, no formal written motion had been filed, and the matter hadn't been noticed for the hearing.

We reject mother's argument. "The family division has broad discretion to make decisions regarding PCC, and we will not disturb those decisions unless this discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Graham v. Adekoya, 2024 VT 36, ¶ 12, 219 Vt. 402 (quotation omitted). The court recognized that father's proposed PCC schedule provided mother with routine contact and generous time over the summer. Mother concedes that her proposed schedule was not possible if she remained in Vermont, and there was no basis for the court to consider the possibility that mother might return to Vermont given the absence of any evidence or argument at the hearing that mother proposed to do so. It would have been pure speculation and an inappropriate basis on which to issue a PCC order. The court did not err in rejecting mother's belated attempt to introduce such evidence through a Rule 59 motion for the reasons it identified in its order. Mother fails to show that the court abused its discretion in its PCC award.

Affirmed.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice

5